IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| CHRISTOPHER WHITTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 1:05cv1050(JCC) |
| HARTFORD LIFE GROUP, ) | |
| INSURANCE COMPANY d/b/a ) | |
| CNA GROUP LIFE ASSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

### M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Defendant's motion to strike documents that are outside of the administrative record and on the parties' cross motions for summary judgment. For the following reasons, the Court will grant Defendant's motion to strike, grant Defendant's motion for summary judgment, and deny Plaintiff's motion for summary judgment.

### I.  Background

This action arises out of the denial of a claim for continuing long-term total disability benefits under an employee welfare benefit plan sponsored by DynCorp, Inc. ("DynCorp") and insured by Defendant, Hartford Life Group Insurance Company ("Hartford"). The claim is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff, Christopher Whitten, was employed by DynCorp as a warehouse specialist until May 8, 2001. His job responsibilities

included driving a forklift, loading and lifting boxes that weighed up to fifty pounds, and working on a computer.  In May 2001, Dr. Michael Hasz diagnosed Whitten with lumbar annual tears, segmental instability of the lumbar spine, lumbar facet syndrome, and lower back pain.  On May 10, 2001, Whitten underwent an anterior lumbar diskectomy, partial vertebrectomy, and interbody fusion at the L4-L5 level of his lumbar spine.  Effective May 24, 2001, Whitten began to receive short-term disability benefits from CNA Group Life Assurance Company ("CNA"), Hartford's predecessor in the policy at issue.

During post-operation office visits to Dr. Hasz on July 11, September 5, October 17, 2001, and January 3, 2002, Whitten complained of continuing lower back pain.  After each of these visits, Dr. Hasz extended Whitten's return-to-work date.  Based on Dr. Hasz's opinions, CNA extended Whitten's short-term disability benefits and eventually granted him long-term disability benefits in November 2001.  To alleviate the reported pain, Dr. Hasz performed follow-up surgery on March 26, 2002 to stabilize the L4-L5 fusion.  After the second surgery, Whitten continued to complain of lower back pain.

Dr. Hasz examined Whitten again on October 23, 2002. During this office visit, Whitten reported headaches, visual changes that looked like lightening and dancing lights, right arm pain, and right leg pain.  Whitten reported that the vision

problems had been ongoing since a 1998 automobile accident and stated that he planned to see an ophthalmologist.  Dr. Hasz referred Whitten to another physician to evaluate whether the arm pain indicated carpel tunnel syndrome.  On December 17, 2002, Dr. Aysegul Soyer conducted an electrodiagnostic test of Whitten's upper extremities and found that the results were abnormal and consistent with bilateral carpel tunnel syndrome.

CNA had previously, in October 2002, conducted a vocational assessment of Whitten's ability to perform alternate occupations based on the medical restrictions listed by Dr. Hasz.  CNA concluded that Whitten was able to perform several alternative occupations, including security systems monitor, inside sales agent, telephone collections agent, and rental agent.  On January 28, 2003, CNA informed Whitten that his long-term disability benefits would cease on November 21, 2003.  While CNA conceded that Whitten remained disabled from his own occupation as a warehouse specialist, CNA determined that Whitten was able to perform to perform alternative occupations for which he was qualified.

When Whitten next saw Dr. Hasz, on July 21, 2003, Whitten reported back pain, symptoms associated with carpel tunnel syndrome, neck pain, shoulder pain, headaches, and visual disturbances.  Based on the multiplicity of symptoms reported by Whitten, Dr. Hasz concluded that Whitten was disabled from work.

On September 9, 2003, Whitten met with Dr. Douglas Wisor, a pain management physician, who recommended physical therapy targeted toward Whitten's cervical and lumbosacral spine.  Whitten also consulted with Dr. Charles Azzam in September 2003 for an evaluation of his possible carpal tunnel syndrome.  In October 2003, Whitten successfully underwent carpal tunnel release surgery on his right hand.  Whitten also consulted with Dr. Biony Jani, an ophthalmologist, and Dr. Paul Hoffman, a neuro-ophthalmologist, in October 2003.  Dr. Jani's examination revealed nothing remarkable, and Dr. Hoffman's examination was normal, with no evidence of optic neuropathy.  Dr. Hoffman stated that Whitten's vision problems could be attributable to an injury to Whitten's occitipal cortex that occurred during the 1998 automobile accident.

On December 16, 2003, CNA received a report from Dr. Eugene Truchelut, a physician with the American Board of Internal Medicine who reviewed Whitten's medical records.  Dr. Truchelut concluded that Whitten's symptoms required some occupational restrictions but that Whitten displayed no impairment which would preclude him from performing work that required a low level of physical exertion.  On April 14, 2004, CNA denied Whitten's claim for continued long-term disability benefits.  Whitten appealed the denial and provided additional medical records from his

consultations with various doctors at the Veterans' Administration Medical Center ("VAMC").

In October 2004, Hartford, as the claims administrator of Whitten's disability policy, engaged University Disability Consortium ("UDC") for purposes of providing an independent medical record review of Whitten's file, including the VAMC records that he had provided on appeal.  UDC assigned the file to Dr. Carl Huff, who reviewed the entirety of Whitten's file, spoke with Dr. Hasz, and concluded that Whitten was "capable of resuming work at a light level according to the Department of Labor Guidelines as of 4/04 to the present time, which is occasionally lifting 10 pounds, frequently lifting 10 pounds with no restrictions on sitting, standing, or walking."  (Admin. R. 078.)  On November 22, 2004, Hartford denied Whitten's appeal.  This action followed.

## II.  Standard of Review

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion

. . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party. *See id.* In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. *See id.* As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

### III. Analysis

A. Motion to Strike

In a December 19, 2005 proposed briefing schedule, the parties agreed "that this case should be decided by the Court

based on its review of the administrative record." Because of this provision, the parties also agreed to forego initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure. The Court adopted the parties' proposed briefing schedule in an Order dated December 22, 2005. Accordingly, the parties engaged in no discovery other than Hartford's transmittal of the administrative record to Whitten on January 4, 2006.

In spite of the parties' agreement and the Court's December 22, 2005 Order, Whitten has attached several documents to his motion for summary judgment that are not part of the administrative record. Hartford has moved to strike each of these documents. The Court agrees that consideration of these exhibits would be inappropriate, especially in light of the fact that the parties have agreed to forego discovery. As such, the Court will grant Hartford's motion to strike Plaintiff's Exhibits 1, 45, 46, 47, 48, 49, and 52.

B.  Cross-Motions for Summary Judgment

The pertinent provisions of Whitten's group insurance plan are as follows:

> "Total Disability" means that, during the Elimination Period and the Insured Employee Occupation Period shown in Statement 4 of the Application [24 months (Admin. R. 391)], the Insured Employee, because of Injury or Sickness, is:
>
>> (1) continuously unable to perform the substantial and material duties *of his regular occupation*;

>    > (2) under the regular care of a licensed physician other than himself; and
>    >
>    > (3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.
>
>    After the Monthly Benefit has been payable for the Insured Employee Occupation Period shown in Statement 4 of the Application [24 months (Admin. R. 391)], "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:
>
>    > (1) *continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience*; and
>    >
>    > (2) under the regular care of a licensed physician other than himself.

(Admin. R. 403 (emphasis added).)  In other words, a claimant needs only be disabled from performing his own occupation and otherwise unemployed to receive disability benefits during the first twenty-four months.  Thereafter, to receive benefits, the claimant must be disabled from performing any occupation for which he is or becomes qualified.  Harford's denial of Whitten's claim for continuing long-term disability benefits was based on a finding that he was capable of resuming light work in occupations other than that which he had previously performed.

   The parties are in agreement that this Court must conduct a *de novo* review of Hartford's decision to deny Whitten's claim for continuing long-term disability benefits beyond the "own occupation" period.  *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Under the *de novo* standard, the

Court will not give deference to Hartford's determination that Whitten was not entitled to benefits. *See Neumann v. Prudential Ins. Co. of Am.*, 367 F. Supp. 2d 969, 988 (E.D. Va. 2005). Whitten bears the burden of proving that he is totally disabled, or in other words, that he is disabled from working in any occupation. *See Lown v. Continental Cas. Co.*, 238 F.3d 543, 549 (4th Cir. 2001) (applying a *de novo* standard of review and holding that the insurer properly denied the plaintiff's claim where the plaintiff failed to meet her burden of proving that she was totally disabled under the terms of the long-term disability plan).

In this case, Whitten has not proven that he is disabled from working in any occupation. A review of the administrative record reveals that the last time a doctor concluded that Whitten was totally disabled was on July 21, 2003, when Dr. Hasz reached this conclusion "[b]ased on his multiplicity of symptoms." (Admin. R. 455.) The litany of symptoms reported by Whitten at that time included carpel tunnel syndrome and visual problems. In October 2003, however, Whitten underwent successful carpal tunnel release surgery, and Whitten's examinations with an ophthalmologist and a neuro-ophthalmologist were normal.

Dr. Hasz also based his July 21, 2003 conclusion in part on Whitten's back condition. In November 2004, Dr. Huff

-9-

telephoned Dr. Hasz during the course of Dr. Huff's review of Whitten's medical records.  Dr. Huff summarized their conversation in a November 10, 2004 letter, in which he stated that Whitten had "good fusion," "no complications," and "a good recovery" following his back surgery.  (Admin. R. 064.)  Dr. Huff also stated, "You [Dr. Hasz] indicated to me that the integrity of the spinal fusion with instrumentation at L4-L5 is quite good and that Mr. Whitten can tolerate light work."[1]  (*Id.*)  Although Dr. Huff sent his summary of the conversation to Dr. Hasz and invited Dr. Hasz's changes or comments, Dr. Hasz added nothing.  Thus, Whitten's primary treating physician for his back problems, and the only physician who ever placed restrictions on Whitten's ability to work, agreed after the conclusion of the "own occupation" period that Whitten was capable of working in a light occupation.

Furthermore, Whitten underwent numerous physical examinations and diagnostic testing during the course of his treatment, but these tests and examinations found no objective indicia of an impairment that would render Whitten totally disabled from performing any occupation.  Whitten has the responsibility to submit proof of his claims, and as this Court

---

[1] In the November 10, 2004 report of his findings, Dr. Huff stated that Dr. Hasz "further stated that the claimant has the actual ability to work but that his working would depend on the claimant's subjective pain."  (Admin. R. 078.)  Although Dr. Huff did not include this qualification in the summary of the conversation sent to Dr. Hasz, Dr. Hasz did not insist on its inclusion.

has previously noted, "[w]ithout an objective component to this proof requirement, administrative review of a participant's claim for benefits would be meaningless because a plan administrator would have to accept all subjective claims of the participant without question." *Williams v. UNUM Life Ins. Co. of Am.*, 250 F. Supp. 2d 641, 648 (E.D. Va. 2003). Here, all that supports Whitten's action for disability benefits are his self-reported claims of pain.[2] Moreover, these self-reported symptoms are undermined by Whitten's medical records. For instance, on September 9, 2003, Dr. Wisor noted that Whitten was "in no acute distress," but "does grimace with non painful movements." (Admin. R. 412.) On April 27, 2004, Dr. Jatinder Sidhu, who examined Whitten at the VAMC, found that Whitten displayed "exacerbated pain behavior [with] a lot of moaning/groaning." (Admin. R. 188.)

In contrast with the absence of evidence to support Whitten's disability claims, Hartford procured two independent medical reviews that supported its denial. In December 2003, Dr. Truchelhut concluded that some occupational restrictions were appropriate for Whitten but that he could perform work that required a low level of physical exertion. In November 2004, Dr.

---

[2] Whitten argues that several of his medical records substantiate his claims of pain. After a review of the administrative record, however, it is clear that the portions relied upon by Whitten are merely statements in which Whitten's doctors summarized the symptoms that he reported, not the doctors' own findings.

Huff concluded that Whitten was capable of resuming work at a light level. Both of these opinions support a conclusion that Whitten was not totally disabled under the terms of his policy.

Finally, Whitten cites a Social Security Administration ("SSA") determination as support for the instant claim. On August 13, 2004, the SSA concluded that Whitten had been under a disability since March 16, 2002. While this Court may consider the SSA determination as evidence, the Fourth Circuit has cautioned that "consideration . . . of the SSA's finding should depend, in part, on the presentation of some evidence that the 'disability' definitions of the agency and Plan are similar." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999). Here, that is not the case. The SSA Administrative Law Judge used the following definition of "disability" in reaching his determination under the Social Security Act:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

This definition differs from the definition of "total disability" in Whitten's group insurance plan in two significant respects. First, the group insurance plan considers a claimant to be totally disabled when he is unable to perform "any occupation for which he is or becomes qualified," (Admin. R.

-12-

403), without regard to the prevalence of such jobs.  The SSA, on the other hand, requires that the alternative occupation "must exist in significant numbers in the national economy."  20 C.F.R. 404.1560(c)(1).  Second, the Hartford plan specifically excludes disabilities caused by "mental or emotional disorders of any type" beyond the twenty-four-month "own occupation" period.  (Admin. R. 405.)  The Social Security Act's definition of "disability" includes mental impairments.  For these two reasons, the SSA determination is only entitled to very limited evidentiary weight.

      The Court finds that the SSA determination provides no basis for granting Whitten disability benefits under the Hartford plan.  As stated above, the SSA determination is of limited evidentiary weight.  Moreover, the Administrative Law Judge did not consider the independent medical reviews of Drs. Truchelhut and Huff, both of which the Court finds persuasive.  Thus, the SSA determination is not convincing in the present case.

      In sum, none of Whitten's treating physicians opined that he was disabled from working in any occupation after the conclusion of the twenty-four-month "own occupation" period.  The only physician to reach the conclusion that Whitten was totally disabled later revisited his opinion and concluded that Whitten was capable of resuming light work.  Although Whitten has the burden of proof, he has offered no objective evidence of an

impairment that would prevent him from performing light work or that would support his subjective claims of pain.  Hartford, on the other hand, has presented evidence that two independent doctors performed extensive reviews of Whitten's medical records and concluded that he was capable of performing light work.  Accordingly, the Court finds that Whitten does not have a "total disability" as the term is defined in his disability benefits policy.

### IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to strike, grant Defendant's motion for summary judgment, and deny Plaintiff's motion for summary judgment. An appropriate Order will issue.


April 28, 2006                    _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                                  UNITED STATES DISTRICT COURT JUDGE